## IVY v. EVANS et al.

Division B. July 2, 1923. Suggestion of Error Overruled, July 28, 1923.
[97 South. 194, No. 23370.]

1. PARTNERSHIP. *Death of one partner held to terminate option in favor of partnership and another.*

Where a creditor of a partnership and another executes an option giving to the debtors the option to pay notes now owing to the creditor, or to be thereafter made at the option of the creditor, or to renew the debt by giving five annual notes embracing principal and interest, and where the notes are renewed from

time to time in gross, and where one of the partners dies before the exercise of the option to make the renewal in five annual notes, the death of such partner terminates the option, and a plea in abatement of a suit based upon the option contract is bad.

2. PARTNERSHIP. *In pleading in bar of suit on note option signed and accepted in firm name, necessary to allege names of persons composing firm at time of option and identifying with those signing note.*

In pleading an option in bar of a suit, where the option is signed and accepted in the partnership name, it is necessary to allege the names of the persons who compose the partnership at the time of the taking of the option, and to allege also that they are identical with those signing the note sued on, and a failure to do so will make the plea in bar bad; and where it appears that one of the partners has died between the taking of the option and the signing of the contract sued on, a judgment abating the suit on the last contract will be reversed.

APPEAL from circuit court of Noxubee county.

HON. THOS. B. CARROLL, Judge.

Suit by G. C. Ivy, temporary administrator of the estate of H. H. Young, deceased, against Isham Evans and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

*Wells, Stevens, & Jones,* for appellant.

The so-called plea of tender was in fact nothing more than a renewal of the plea in bar set forth in the first special plea. 14 Ency. of Pleading and Practice, page 654; *Lyons* v. *Williamson,* 27 Me. 152; *Greeley* v. *Whitehead,* 35 Fla. 523.

Parol evidence is inadmissible to vary the time or mode of payment of a promissory note. 1 Williston on Contracts, par. 221; *Miner* v. *Michie,* Walker 24; *Ovett Land & Lumber Co.* v. *Wimberly,* 68 So. 855; *Smith* v. *Elder,* 7 S. & M. 507; *Pack* v. *Thomas,* 13 S. & M. 11; *Kerr* v. *Kuykendall,* 44 Miss. 137; *Wren* v. *Hoffman,* 41 Miss. 616;

*Patrick* v. *Petty,* 83 Ala. 420; *Tuscalusa Cotton Seed Oil Co.* v. *Perry,* 85 Ala. 158, at page 167; *McDonald* v. *Elfes,* 61 Ind. 279; *Borden* v. *Pea, Receiver,* 20 Ark. 293; *Clark* v. *Hart,* 49 Ala. 86; Story on Promissory Notes, notes on page 336; *Hoare et al.* v. *Graham et al.,* 3 Camp. 57; 3 R. C. L., par. 98; 1 L. R. A. 816; Greenleaf On Evidence (16 Ed.), par. 275.

The written declaration of Mr. H. H. Young, deceased, "Exhibit A" is a voluntary option or unilateral contract without consideration and revocable at will. Williston On Contracts, 55, 58, 60, 60 b, 61, 103 e; *Levin* v. *Dietz,* 20 L. R. A. (N. S.) 251; *Coldblast Transportation Co.* v. *Kansas City Bolt & Nut Co.,* 11 Fed. 77, 57 L. R. A. 696; *Harrison* v. *Cage,* 5 Mod. 4118. Other authorities are cited in 1 Williston On Contracts, note 72, page 214; *Comstock* v. *North,* 88 Miss. 754; *Kolb* v. *Bennett Land Co.,* 74 Miss. 567; 3 Pomeroy, section 1405 and note; *Brown Bros. Lbr. Co.* v. *Preston Mill Co.,* 83 Wash. 648, 145 Pac. 964; *Meyer* v. *Meyer,* 106 Miss. 638.

The unilateral offer, Exhibit "A" was terminated by the death of Mr. Young. It is well settled that any unilateral or revocable offer of this nature is revoked by death. 1 Williston on Contracts, par. 62. A subscription contract is revoked by the death of the promisor before it has been accepted and acted upon. *Wallace* v. *Townsend,* 43 Ohio State, 54 Am. Rep. 829; *Grand Lodge I. O. G. T.* v. *Farnham,* 70 Cal. 158; *Foust* v. *Board of Publication,* 8 Lea 552; *Pratt* v. *Trustees of Baptist Soc. of Elgin,* 93 Ill. 475, and 34 Am. Rep. 187; *Helfenstein's Estate,* 77 Pa. 328, 18 Am. Rep. 449; *Twenty-Third Street Baptist Church* v. *Cornwell,* 6 L. R. A. 807, note; *Phipps* v. *Jones* (Pa.), 59 Am. Dec. 708; *Jordan* v. *Dobbins,* 122 Mass. 168; *Browne* v. *McDonald, Executor,* 129 Mass. 66; *Wallace* v. *Townsend,* 43 Ohio State, 537. Neither an administrator nor an executor is authorized to make new contracts for the deceased and may not execute commercial paper in a way to bind the estate. Endorsements

and transfers affecting liability cannot be made after the death of a party to a note or bill. *Bromage* v. *Lloyd*, 1 Exch. 32, 5 Dowe. & L. 123, 162 L. J. Exch. 257; *Bank of Washington* v. *Pierson*, 2 Cranch. C. C. 685; *Mich. State Bank of Leavenworth's Estate*, 28 Vt. 209. A power of attorney to demand payment on a note is determined by the death of the principal. *Gal.* v. *Tappan*, 12 N. H. 145, 37 Am. Dec. 194. The retainer as an attorney is determined by the death of his client. *Whitehead* v. *Lord*, 7 Exch. 691, 21 L. J. Exch. 239. In 49 L. R. A. (N. S.) 1008, will be found a case note on "death of principal" as revoking the power of an agent to sell real estate. See *Luckett* v. *Briskell*, 115 Miss. 457.

The burden was upon appellees to show a consideration and none has been shown. 8 C. J., par. (1215) 8, page 929; *Wynne et al.* v. *Colorado Springs Co.*, 3 Colo. 155; *Sostello* v. *Wilhelm*, 13 Kan. 229; 1 Williston on Contracts, 104, 107; *Bowman* v. *Citizens National Bank* (Ind.), 56 N. E. 39.

The written proposal, Exhibit "A," became merged in and a part of the subsequent promissory note sued on. Appellees, as makers of the note sued on, are bound by the promissory note as written. It is certain as to parties, as to the amount and as to time. These are fundamental requirements of every negotiable instrument. Any prior understanding becomes merged in the writing evidencing the note. 1 Williston on Contracts, 434, 435, 138 d, par. 723.

Assuming for argument that the written letter, "Exhibit A," is a valid and enforceable contract, the same could not be plead in bar to this action upon the promissory note. Where a written collateral agreement is given along with or in connection with a promissory note and there is an action upon the note, the written collateral agreement, although breached, constitutes no bar to the action on the note, but the defendant is remitted to a separate action for damages. *Dow* v. *Tuttle*, 4 Mass.

414; *Bond* v. *Worley,* 26 Mo. 253; *Hawes* v. *Mulholland,* 78 Mo. App. 493; *Bircher* v. *Payne,* 7 Mo. 462; *Atwood* v. *Lewis,* 6 Mo. 392; *Kennedy* v. *Gibson,* 68 Kan. 612; *Gorrell* v. *Home Life Ins. Co., of New York,* 63 Fed. 371; *Lane* v. *Manning,* 8 Yerger (Tenn.), 435; *Goddard* v. *Cutts,* 11 Maine, 440; *Shed* v. *Pierce,* 17 Mass. 622; *Garnier* v. *Papin,* 30 Mo. 243; Randolph on Commercial Paper, (2 Ed.), par. 1816; *Nelson* v. *White,* 61 Ind. 139; *Porter* v. *Pierce,* 55 Am. Dec. (N. H.) 151.

Upon an examination of the authorities the court will find that under the common law there could be a covenant not to sue or a covenant to forbear, given upon a good and valid consideration, and that if this covenant was in favor of all the parties jointly and severally liable upon a promissory note or bill of exchange, then the covenant not to sue could be plead in bar of the action, such a covenant amounting to an absolute release of liability or a full settlement. But a covenant to forbear is impossible when there is no commercial paper in existence. And even a covenant to forbear cannot be plead in bar where it does not run in favor of all the parties jointly and severally liable.

The testimony shows that the notes executed by appellées for borrowed money were by mutual consent renewed annually and therefore renewed more than one time and that the terms of the option contract, Exhibit "A," have been waived.

The facts show that the offer relied on was made under such circumstances that it would be inequitable to enforce it.

Furthermore, the death of Mrs. Nunn revoked the option relied upon. 1 Williston on Contracts, par. 2, says: "It is generally held that the death of the offeror or offeree terminates the offer." See *Sutherland* v. *Parkins,* 75 Ill. 338; *Mactier's Administrators* v. *Frith,* 6 Wendell, 21 Am. Dec. 262; *Newton* v. *Newton,* 11 R. I. 390, 13 C. J. 298; *Bank of Port Gibson* v. *Baugh,* 9 S. & M. 290. The part-

nership of E. F. Nunn & Company has been destroyed by the death of the security contemplated by the written option is gone forever.

An offer has been held to lapse where one of the parties becomes bankrupt. *Meymell* v. *Surtees,* 1 Jur. (N. S.) 737. An offer made to a partnership is terminated by dissolution of the partnership. *Goodspeed* v. *Wiard Plow Company* (Mich.), 7 N. W. 902. See also *Robertshaw* v. *Hanway,* 52 Miss. 713.

We press the point that the death of Mrs. Nunn and the bankruptcy of Isham Evans operates to revoke the option. We respectfully submit that this point is a complete defense and necessitates a reversal of the case and judgment here for the appellant.

*W. G. Roberds* also for appellants.

I.   The letter of February 21, 1916, is a *nudum pactum.* 1. It is without consideration: a. Nothing given for it when executed: (1) It expressly states it was written at the request of appellees. (2) Its wording shows nothing paid at the time. (3) The testimony (pages 106-108) is that nothing was paid. *Newman* v. *Supreme Lodge K. of P.,* 110 Miss. 371, 70 So. 241. b. The letter was not a benefit to promisor, Young, nor a detriment to promisee, Evans. c. The court below found as a fact there was no consideration: "There was no consideration for the agreement," (page 125). (a) Necessity of consideration: 13 C. J., 312; 6 R. C. L. 649-650 and authorities cited under sub-head 7; Am. & Eng. Enc. Law (2 Ed.), 673; 21 Am. & Eng. Enc. Law (2 Ed.), 926; *Davis* v. *Morgan,* 97 A. S. R. 171 (Ga.) 61 L. R. A. 148; *Smith* v. *Bangham,* 28 L. R. A. (N. S.) 522 (Cal.); *Cohaba Coal Co.* v. *Veitch* (Ala.), 65 So. 75; 1 Parsons on Contracts (6 Ed.), 427; Note 21 L. R. A. 129; *Smith* v. *Cauther* (Miss.), 54 So. 844; *Stiger* v. *Jaap,* 83 Miss. 351; *Comstock* v. *North,* 88 Miss. 755; *Kolb* v. *Bennett Land Co.,* 74 Miss. 567; *Davis*

v. *Stout* (Ind.), 27 Am. St. Rep. 565; *Williams* v. *Grocery Co.* (Fla.), 75 So. 523.

2. There is no mutuality of obligation—it is unilateral: a. Appellees made no promise and assumed no obligation. (1) Appellees could not have been forced to do anything. (a) Mutuality of obligation essential in absence of other consideration: 6 Am. & Eng. Enc. Law (2 Ed.), 727; 6 R. C. L. 686-687-688; 6 R. C. L. 677-692; *Alabama City G. & A. Railway Co.* v. *Kyle,* 81 So. 60 (Ala.); *Collins* v. *Smith,* 43 So. 838 (Ala.); *Collins* v. *Abel,* 44 So. 109 (Ala.), 125 Am. St. Rep. 24; *McGowin Lumber & Export Co.* v. *Camp Lumber Co.,* 68 So. 263 (Ala.); *Eldorado Ice & Planing Co.* v. *Kinard,* 131 S. W. 460 (Ark.); *Hauser* v. *Hobart,* 40 L. R. A. (N. S.) 410 (Pa.); *Citizens National Life Ins. Co.* v. *Murphy,* 156 S. W. 1069 (Ky.); *Rehmzeiher Co.* v. *Walker Co.,* 160 S. W. 777 (Ky.); *Levin* v. *Deitz,* 87 N. E. 454, (N. Y.) 20 L. R. A. (N. S.) 251; *Rogers* v. *Larrimore & Perkins,* 222 S. W. 512 (Ky.); *Pope* v. *Thompson,* 177 N. W. 607 (Wis.); *Reynolds* v. *Louisville, etc., Ry. Co.,* 40 N. E. 410 (Ind.); *Semon, Boche, & Co.* v. *Cappis, et al.,* 111 Am. St. Rep., 171 (Ind.); *Kolb* v. *Bennett Land Co.,* 74 Miss. 567; *Jayne* v. *Drake,* 41 So. 372 (Miss.); 1 Parsons on Contracts (6 Ed.), 448.

II. This letter was an offer of an option, without consideration, revokable by offerer or his representative any time prior to creation of contract by acceptance. 7 Am. & Eng. Enc. Law (2 Ed.), 126. Authorities cited: 21 Am. & Eng. Enc. Law (2 Ed.), 906; Williston on Contracts, par. 25 and No. 55; *Harper* v. *Goldschmidt,* 104 Pac. 457 (Cal.); 28 L. R. A. (N. S.) 689-134 Am. St. Rep. 124; Note to 6 L. R. A. 807; *Consolidated Portrait & Frame Co.* v. *Bennett, et al.* (Ala.), 51 So. 936; *McGowin Lumber Co.* v. *Camp Lumber Co.* (Ala.), 68 So. 263; *Eldorado Ice Co. & Planing Mill* v. *Kinard* (Ark.), 131 S. W. 460; *Davis* v. *Stout* (Ind.), 22 Am. St. Rep. 565; *Williams* v. *Donninsylar Gro. Co.* (Fla.), 75 So. 593;

*Comstock* v. *North,* 88 Miss. 755; *Reese Co.* v. *Houst,* 124 Pac. 442.

1.   Nothing was done by appellees under letter which created a contract.   a.   Construed most strongly against appellees:   *Home Mutual Fire Ins. Co.* v. *Pittman,* 111 Miss. 420, 71 So. 739; *Kolachny* v. *Galbreath,* 38 L. R. A. (N. S.) 451.   b.   If execution of annual note was under letter, then appellees elected their option and cannot exercise another.   *Twaits* v. *Penn. R. R. Co.,* 75 A-1010, 77 N. J. Eq. 103.

III.   This letter was revoked by— 1. Death of H. H. Young in December, 1921; *Pratt* v. *Baptist Society* (Ill.), 34 Am. Rep. 187; *Aitken* v. *Langs Admr.* (Ky.), 90 Am. St. Rep. 263; *Twenty-Third Street Church* v. *Cornerll* (N. Y.), 6 L. R. A. 807; *Wallace* v. *Townsend* (Ohio), 59 Am. Dec. 708; *Helfenstein's Estate* (Pa.), 18 Am. Rep. 449; *Jordon* v. *Dabbine* (Mass.), 23 Am. Rep. 305; Williston on Contracts, No. 62; 7 Am. & Eng. Enc. Law (2 Ed.), 136.   2.   By letter of attorney for administrator January 10, 1922.   *Moffett* v. *Rochester,* 178 U. S. 373-44 L. Ed. 1108; *Borst* v. *Simpson,* 90 So. 373 (Ala.) ; *Timmons* v. *Bostauch* (Ga.), 82 . . . 29; *Lincoln* v. *Gay* (Mass.), Am. St. Rep. 480; *Cooper* v. *Lansing Wheel Co.* (Mich.), 34 Am. St. Rep. 341; *Toledo Co.* v. *Stephens* (Ark.), 152 S. W. 926; *Smith* v. *Bangham* (Cal.), 28 L. R. A. (N. S.) 522.   3.   By the administrator demanding payment.   Williston on Contracts, Sec, 60 a.

IV.   Even if the letter be construed as an agreement and executed in connection with note sued on, it was a collateral and independent agreement, and could not be pleaded in abatement of suit on note, but appellees are remitted to remedy for breach.   *Atwood* v. *Lewis,* 6 Mo. 392; *Brown* v. *Shelby,* 4 Ind. App. 477; *Mills* v. *Todd,* 83 Ind. 25; *Bridge* v. *Tierman,* 36 Mo. 439; *Carrier* v. *Sears,* 4 Allen. 338, 81 Am. Dec. 707; *Shattuck* v. *Hart,* 98 Mich. 557; *Henshaw* v. *Park,* 116 Mass. 541; *Durand* v. *Steven-*

*son,* 5 U. C. B. 336; *Traver* v. *Stevens,* 11 Cush. 167; *Waterhouse* v. *Kendall,* 11 Cush. 128; *Dow* v. *Tuttle,* 4 Mass. 141, 3 Am. Dec. 226; *Poster* v. *Pierce,* 22 N. H. 275, 55 Am. Dec. 151; *Plumb* v. *Niles,* 34 Vt. 231; *Clough* v. *Baker,* N. H. 254; *Woodin* v. *Foster,* 16 Barb. 146; *Lyons* v. *Stills,* 97 Tenn. 514.

*Jacobson* and *Brooks,* for appellees.

The executory writing of date February 21, 1916, marked, Exhibit "A" to the plea in abatement, was accepted and acted upon by both parties upon the execution of the note sued on, and lending of money, and then and thereby became an executed and binding obligation with note constituting a contract sustained by ample consideration and irrevocable. *Kolb* v. *Bennett,* 74 Miss. 567; *Smith* v. *Cauthen,* 98 Miss. 746; *Sunflower Bank* v. *Pitts,* 108 Miss. 380; *Smith* v. *Cauthen,* 98 Miss. 746, 54 So. 844. There is no dispute in the record, or in the case anywhere, and there could be no dispute that Nunn and Company and Evans exercising their right under the contract, did borrow the money, and executed the promissory note sued upon here, under and by the provisions and terms of said contract.

The performance of the agreement on part of both parties mutually support each other and the interest which the note bears also provides sufficient valuable consideration for the performance of the contract. *Moore* v. *Redding,* 69 Miss. 841; *Kern* v. *Andrews,* 59 Miss. 39; *Brown* v. *Prophit,* 53 Miss. 649; *Harrison* v. *Garner,* 110 Miss. 586; *Lyon* v. *Sanders, et al.,* 23 Miss. 530, at 537. In the brief of Mr. Roberds, he calls attention to the necessity of consideration, 13 C. J., page 312, and we have read the section he refers to, and call his and the court's special attention to the last part of this section referred to, which is on page 314 of the same volume.

The death of Mr. Young did not revoke the contract.

*Cox* v. *Martin, Administrator,* 75 Miss. ·229.   The pleas
in abatement and the plea tendering extension notes are
the proper pleas of defense in this case.   14 Encyclopedia
of Pleading and Practice, page 652, section 9; Joyce on
Defenses to Commercial Paper, section 310, page 408.

The writing filed with the plea in abatement was prop-
erly admitted in evidence and considered by the lower
court, and with the promissory note sued on in this case
forms one entire and single contract.   8 C. J., page 196,
section 310, 327-328; Joyce on Defenses to Commercial
Paper, section 339, page 440; *Jacob* v. *Mitchell,* 22 N. E.
768; *Sutton* v. *Beckwith,* 13 Am. St. Rep. 344.

It has been well settled, in this state and elsewhere,
that several instruments made at one and the same time,
and having relation to the.. same subject-matter, must be
taken to be parts of one transaction, and construed to-
gether for the purpose of showing the true contract be-
tween the parties:  *Singer Mfg. Co.* v. *Haines,* 36 Mich.
385; *Smith* v. *Van Blacrom,* 45 Id. 371; *Dudgeon* v. *Hag-
gart,* 17 Id. 273; *Eberts* v. *Selover,* 44 Id. 519, 38 Am.
Rep. 278; *Chapman* v. *Colby,* 47 Mich. 46, 51; *Bronson* v.
*Green,* Walk. Ch. 56; *Makepeace* v. *College,* 10 Pick. 298,
302; *Jackson* v. *McKenny,* 3 Wend. 233, 20 Am. Dec. 690;
8 C. J., section 1015, page 739.,

*Wells, Stevens & Jones,* and *W. G. Roberds,* for ap-
pellant in reply.

A new loan would not be performance or part perform-
ance sufficient to change the unilateral contract into a
mutual one.   The contract, Exhibit A, does not relate
to the execution and delivery of a principal note for bor-
rowed money.   It relates purely to the method of taking
up this principal note when it should become due.   This
is the error underlying the whole judgment appealed from.
The learned circuit judge stated that "the death of Young
could not revoke the option or offer made in the letter
because he died in December, 1921, and the option had been
acted on and had become binding on him some months

before by lending under it." It is impossible for us to follow this reasoning. How could the option be acted upon before the note matured? When the note matured Mr. Young was dead. The contract relied on contemplated renewals by consent and the learned circuit judge found as a fact that the entire indebtedness had been renewed from year to year and the proof showed that these renewals were made annually. This is a demonstration not only that the terms of the option contract had been waived but also of the fact that the option could not be availed of until the principal note fell due.

The fundamental error, we respectfully submit, underlying the decision appealed from, is assuming that part performance of the option contract can be shown by the mere execution and delivery of the note sued on. With reference to an option to buy real estate, see 23 A. L. R., page 1222.

Argued orally by *J. Morgan Stevens* and *W. G. Roberds* for appellant and by *Gabe Jacobson* for appellees.

Etheridge, J., delivered the opinion of the court.

The appellant was plaintiff in the court below and brought suit against appellees Isham Evans and Mrs. Lillian N. Evans; the latter being engaged in the mercantile business under the name and style of E. F. Nunn & Co., alleging that on the 28th day of February, 1921, the defendants executed their promissory note to H. H. Young, thereby promising to pay fourteen thousand, two hundred and ninety-two dollars and nineteen cents, with six per cent. interest per annum from date; that said Young had departed this life, and plaintiff was appointed administrator of said estate; that, although the note was past due and unpaid and payment had been demanded, the defendants had failed and refused to pay the same; and demanded judgment for said sum and interest, together with two thousand dollars attorneys' fees. Said note reads as follows:

"$14,292.19.    West Point, Miss., 2/28/1921.

"One year after date for value received we promise to pay to H. H. Young or order at First National Bank of West Point, Mississippi, fourteen thousand two hundred ninety-two and nineteen one hundredths dollars in current funds with six per cent. per annum from date till paid. The securities mentioned on the reverse hereof are hereby pledged and delivered to secure payment of this note. Should said securities decline in value, the maker of this note hereby agrees, within twenty-four hours from demand to that effect by the holder, to pledge additional securities satisfactory to the holder to cover such decline. Failure or refusal to comply with this demand shall at once mature this note and pledge. On maturity of this note, either by its terms or on account of the failure to make good any decline in value of the pledged securities, the holder is hereby authorized to sell said securities at public or private sale, without recourse to judicial proceedings, and to make any transfers of stock or other property that may be required to effect such sale, and to apply the proceeds thereof to the payment of this note and of any costs and attorney's fees that may be incurred, and the remainder, if any, to the payment of any other indebtedness, whether matured or not matured, owned by the maker hereof to this bank. The holder of this note shall have the right to purchase the pledged securities at their market value, or at any judicial or auction sale thereof, or when sold on the stock exchange.

"[Signed]    E. F. NUNN & Co.,
"By MRS. ISHAM EVANS,
"ISHAM EVANS."

The defendants plead the general issue, a plea of tender, and a special plea in abatement of the suit. The special plea in abatement set up in abatement of the suit that H. H. Young in his lifetime on the 21st day of February, 1916, made a contract with the defendants in which he agreed in writing that, if the defendants would borrow

money from him thereafter, as the indebtedness so incurred should become due, the defendants at their option should have the right to divide the said amount so becoming due into five equal installments, to be expressed by their promissory notes payable to him, each bearing interest at the rate of six per cent. per annum, payable annually. Under the said written contract said Young further agreed that, upon the exercise of the option so granted, the several amounts with interest accruing thereon to the maturity of each shall constitute several sums, each of which as they mature shall, at the option of the defendants, be divided into five equal installments as agreed upon in the said written instrument, a copy of which is attached to the said plea marked Exhibit A; and that the said defendants had executed and tendered such notes to the administrator prior to the bringing of the suit and on or before the maturity of the note sued upon. The plea of tender pleads the tender of such note set forth in this plea under the alleged agreement of February 21, 1916, which said agreement reads as follows:

"West Point, Miss., Feb. 21, 1916.

"E. F. Nunn & Co., and Isham Evans, West Point, Miss.: In answer to your request that I commit myself with reference to the maturities and payments of the money now due by you to me, and further with reference to any other amounts that may hereafter become due. I beg to say that I hereby agree that, as to each and every amount for which you are now indebted to me, or for which you may hereafter become indebted to me, in the way of loans or advances, which at my option, upon your request, I may at any time in the future make, and for which there shall be no limitations of time, you will be granted an extension of five years, of said several amounts, such as may now be due or hereafter to become due, dating from maturity of each; that is to say, as each amount shall become due, at your option, the same shall be divided into five equal installments, expressed by your prom-

issory notes payable to me or order, maturing one year each thereafter until all are paid, each bearing interest at the rate of six per centum per annum, payable annually. I further agree that if, before the exercise of your option for the five-year period of extension herein mentioned, there should be, by mutual agreement, any annual renewal or renewals of any such indebtedness, then such period of extension, as to such annual renewals, shall date from maturity of such renewals. I further agree that upon the exercise of the option herein granted that the said several amounts, with interests accruing thereon up to the maturity of each, shall constitute several principal sums of money, each of which, as they mature, shall, at your option, be divided into five equal installments, as herein above agreed. Believing this will meet your request, the stipulations set forth shall become binding upon my heirs personal representatives, and assigns, upon the delivery to you of this letter, unless you shall at once signify your will to the contrary.

"Yours truly, [Signed] H. H. Young.
"Accepted:  [Signed]  E. F. NUNN & Co.
"Accepted:  [Signed]  ISHAM EVANS.
"Witness:  [Signed]  O. N. MANCILL.
"L. W. YEATES."

The notes made exhibits to these pleas were signed E. F. Nunn & Co., by Mrs. Lillian N. Evans, Mrs. Lillian N. Evans, and Isham Evans.

To this special plea the plaintiff replied, not denying the tender of the five renewal notes set out as exhibits to the said plea in abatement, but nevertheless saying that said suit ought not to abate, for the plaintiff denies that the instrument dated February 21, 1916, ever was or is a contract, and that same is null and void and has never been legal, valid, or binding, and denies that the note sued on was executed pursuant to or in accordance with the said instrument; denies that Young ever desired to lend defendants money but avers that the defendants were au-

xious to borrow money of said Young, and during the year 1914 did borrow large sums of money payable in one year, and that just before the last note became due said defendant Isham Evans, suffered large financial losses and defendant Mrs. Lillian N. Evans suffered large financial losses, and requested said Young to give them said instrument, and said Young, without any consideration of any kind to him moving, but because of the influence which said Evans had over him as his business adviser, and purely as an accommodation, signed the said instrument, not knowing of the financial losses suffered by the defendants, said instrument being a great benefit to the defendants and a great detriment to the said Young; that said instrument, dated February 21, 1916, was and is void for the following reasons: First, because made without consideration; second, it lacks mutuality; third, because said instrument is nothing but an offer on the part of said Young, without consideration, and not under seal, revocable at any time, and that same was revoked by his death, and also by the administrator after his death; fourth, that same was never accepted by the said defendants; fifth, that the plaintiff says the said note sued on in this suit is a renewal of part of the indebtedness incurred in the year 1914 and prior to the execution of the instrument of February 21, 1916.

The proof in the case shows that after the execution of said instrument of February 21, 1916, the defendant Isham Evans became bankrupt and went into bankruptcy; that prior to said act of going into bankruptcy he was reputed to be an excellent business man of great wealth; he was president of one of the banks at West Point, also president of a cotton oil company; that he became largely indebted to the bank of which he was president, which fact was not known outside of the bank; that the money which was borrowed from Young was borrowed principally for the purpose of paying off the debt to the bank which, on account of the passage of the bank guaranty

law in 1914, prohibited the bank from carrying such debt. This fact, however, is not shown to have been known to Young. The proof also shows that the cotton oil company of which Evans was president suffered great losses and became insolvent. The evidence further shows that the note was renewed from time to time between the time of the first loan in 1914 and the time of the execution of the note sued upon in 1921. The record shows that in 1916 the firm of E. F. Nunn & Co. was composed of Mrs. E. F. Nunn and Mrs. Lillian N. Evans, and that between the execution of the instrument of February 21, 1916, and the note sued upon Mrs. Nunn died, and that E. F. Nunn & Co. at the time of the execution of the note of 1921 sued upon was composed solely of Mrs. Lillian N. Evans, who was the daughter and the only heir of Mrs. E. F. Nunn. This evidence on objection was stricken out, but the special plea in bar does not allege, as it should allege, that E. F. Nunn & Co. were the same persons in 1921 that it was on the execution of the instrument of February 21, 1916. The replication to the plea in bar denies that the note in 1921 was taken under the agreement of 1916, and there is no proof in the record to show that the partnership of E. F. Nunn & Co. in 1921 was the same as in 1916 when said instrument was executed. It affirmatively appears from the record that, after the execution of the instrument of 1916, Mrs. E. F. Nunn died, and that the defendant Isham Evans became insolvent.

The agreement of February 21, 1916, imposed no legal obligation upon either Mrs. E. F. Nunn or Mrs. Lillian N. Evans or Isham Evans, and no obligation whatever rested upon them or bound their property or assets. Neither does the instrument bind or purport to bind their executors or administrators. Consequently the estate of Mrs. E. F. Nunn is in no wise bound by said instrument and she was not obligated in any respect to do anything, but had a mere option which her death revoked. The in-

strument tendered with the plea in bar—that is to say, the five notes—does not and cannot bind the estate or property of Mrs. E. F. Nunn. The parties signing that note are not the same parties which Exhibit A to the plea contemplates should sign the note. It may have been that Mrs. E. F. Nunn's signature to the note or the contract was the leading or moving consideration of Young in executing this instrument. The evidence shows she was a person of large property, but it is impossible to bind her or her property after her death, and consequently the signature of E. F. Nunn & Co. now is not the same as the signature of the E. F. Nunn & Co. who accepted the instrument, Exhibit A. This being true, the plea in bar was bad, and the judgment of the court below cannot be upheld based upon that plea and proof hereunder. In view of this fact, it is unnecessary to decide what effect the instrument would have were Mrs. E. F. Nunn now living and had joined in the execution of the notes, nor is it necessary to decide what effect the bankruptcy and insolvency of Isham Evans after the execution of the instrument of February 21, 1916, has on the instrument relied upon in bar of the suit.

It follows from what we have said that the judgment of the court below must be reversed, and the cause remanded, for further proceedings in accordance with this opinion.

*Reversed and remanded.*